UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| Carson Block,<br><br>　　　　　Movant,<br><br>– against –<br><br>Techtronic Industries Company Limited, and<br>Techtronic Industries Factory Outlets, Inc.,<br><br>　　　　　Respondents. | Case No. 1:24-mc-00873 |
|---|---|

**PLAINTIFFS-RESPONDENTS' OPPOSITION TO NON-PARTY CARSON BLOCK'S
MOTION TO QUASH SUBPOENA, OR IN THE ALTERNATIVE,
<u>FOR A PROTECTIVE ORDER AND CROSS-MOTION TO COMPEL</u>**

Plaintiffs-Respondents Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc. (together, "TTI") oppose the motion to quash the subpoena ("Motion" or "Mot.") filed by non-party Carson Block ("Mr. Block"), and respectfully move this Court for an order compelling him to produce responsive documents and attend a deposition.

**INTRODUCTION**

Carson Block's motion should be denied because he is a key fact witnesses in the underlying action. ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ The apex doctrine provides no cover because Mr. Block is far from an executive in a mega-organization distanced from the underlying events; rather, Mr. Block was at the core of the arrangement and has unique personal knowledge that cannot be discovered from other witnesses.

The underlying action, *Techtronic Industries Company Ltd. v. Bonilla*, 8:23-cv-1734 (M.D. Fla.), stems from a "short and distort" scheme operated by Defendant Victor Bonilla ("Mr. Bonilla"). Mr. Bonilla is a short seller who published two reports accusing TTI of engaging in fraudulent accounting and business practices. These malicious reports, however, were and are unequivocally false, and caused Plaintiff-Respondent TTI significant reputational and economic harm (including nearly $3.5 billion in market capitalization loss). ████████████

████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████ Mr. Block now unsurprisingly seeks to distance himself from this clandestine and damaging deal, but his efforts are superficial

1

and unavailing. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ Mr. Block does not even dispute his knowledge through a sworn statement to this court. As a result, Mr. Block's documents regarding his involvement with this matter are highly relevant, and he should be compelled to appear for a deposition about the underlying events.

## BACKGROUND

TTI is a Hong Kong-based power tool manufacturer that is publicly traded on the Hong Kong stock exchange. Mr. Bonilla is a short seller who publishes self-proclaimed "research" reports regarding public companies for profit.[1] In conjunction with publishing, Mr. Bonilla either shorts the stock of the company that he reports upon or ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Discarding truth and damage to companies and their investors, Mr. Bonilla selfishly aims to decrease the share price of his targets so that he and Muddy Waters can profit off the harm his reports inflict. In February and June of 2023, Mr. Bonilla published two defamatory "research" reports about TTI, with devastating effect: TTI's stock price dropped nearly 20%. *TTI v. Mr. Bonilla*, 8:32-cv-1734 (M.D. Fla.) ("MDFL Action"), ECF No. 68, *see* Mot. Ex. 1. TTI brought suit in Florida seeking to recover its costs, expenses, and remedy the reputational harm caused by Mr. Bonilla's defamatory statements. *Id.*

Muddy Waters is an investment manager founded and run by Mr. Block with eight employees and independent contractors. *Barnes v. Block*, 1:22-cv-07236, ECF. No. 28 (S.D.N.Y. Nov. 29, 2022). Mr. Block is Muddy Waters's Chief Investment Officer. *See* Ex. 1 (Muddy Waters Form ADV). Far from being hands-off, he tightly controls management of his funds, which he in turn touts in investor communications. Ex. 2 (Muddy Waters Investment Letter). Mr. Block

---
[1] Mr. Bonilla publishes under the pseudonym "Jehoshaphat Research."

is also the only U.S.-based member of the three members of Muddy Waters Capital Domino Fund and MW Capital Global Opportunities Fund, ███████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████ Ex. 3 (Domino Fund Form D); Ex. 4 (GOF Fund Form D); Ex. 5 (Muddy Waters Contract); Ex. 6 (Bonilla Bank Statement).

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███████████

On July 11, 2024, TTI served on Mr. Block a subpoena consisting of eleven requests for documents covering the following topics: (1) documents and communications related to TTI and the subjects of the first reports between Block and Mr. Bonilla or Block and Mr. Bonilla's assistant; (2) documents evidencing an agreement between Muddy Waters and Mr. Bonilla; (3) documents

---

[2] ███████████████████████████████████████████████

[3] The accompanying video is available at https://www.zer0es.tv/big-announcements/undamaged-goods/.

and communications regarding Mr. Block's financial interests and trading in TTI stocks, options, futures, or other securities between August 1, 2022 and the present; (4) documents relating to Mr. Bonilla's reports; (5) documents and communications relating to financial analyses of TTI; (6) documents relating to the underlying action, TTI, Jehoshaphat Research, short selling, and Mr. Bonilla's hedge fund; and (7) documents and communications reflecting any business, enterprise, joint venture, or business entity, owned in whole or in part, directly or indirectly by Mr. Bonilla and Mr. Block. Exs. 10 (July 11, 2024 email from T. MacNeill to D. Esper), 11 (Block Subpoena). The subpoena also directed Mr. Block to sit for a deposition on August 2.

Mr. Block objected to the subpoena.[4] Ex. 12 (Responses and Objections to Subpoena of Mr. Block). During a meet and confer on July 31, Mr. Block's counsel offered no factual basis for his boilerplate objections and refused to engage on any discussion of burden aside from rote hypotheticals. Ex. 13 (Meet & Confer E-mail Correspondence). Mr. Block's counsel subsequently informed counsel for TTI that Mr. Block would not appear for his deposition, effectively granting himself the relief of a protective order, which he had not bothered to seek.

## LEGAL STANDARD

A party moving to quash a subpoena bears the burden to show "good cause" to quash, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Sanchez v. Swift Transp. Co. of Arizona, L.L.C.*, No. 15-cv-15, 2016 WL 10589438, at *1–2 (W.D. Tex. Apr. 22, 2016). If the moving party argues that

---

[4] TTI served its subpoena on Dilan Esper, Mr. Block's then-counsel (who also represents Mr. Bonilla and, at the time, represented Muddy Waters and Freddie Brick), via email as the parties had agreed and proceeded during the litigation. Mr. Esper agreed to accept the subpoena and served objections. Exs. 10, 12. Upon further review, TTI noted that the deposition location should elsewhere and TTI accordingly reissued the subpoena with the updated address but no other changes. TTI heard nothing further from Mr. Block until July 30, when Mr. Esper informed TTI that Mr. Block had retained new counsel.

4

compliance would subject it to "undue burden," the court considers "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed," as well as expense and inconvenience to a non-party. *Wiwa*, 392 F.3d at 817–18.

## ARGUMENT

### I. MR. BLOCK HAS NOT DEMONSTRATED GOOD CAUSE TO QUASH THE SUBPOENA

#### A. The Apex Doctrine Does Not Apply

Mr. Block's primary argument, that he is an apex executive and a deposition therefore would be improper, fails. Apex depositions are proper in instances such as the case at bar "when conduct and knowledge at the highest levels of the corporation are relevant to the case." *Fazzino v. Roe*, 18-cv-00114, 2020 WL 13228700, at *2–3 (W.D. Tex. Nov. 16, 2020) (permitting deposition of executive and noting that a significantly smaller corporation may not be subject to the apex executive doctrine). "[C]ourts may not completely prohibit the deposition of a witness who has relevant information, including an 'apex' executive, absent 'extraordinary circumstances.'" *Texas v. Google LLC*, 4:20-CV-957-SDJ, 2024 WL 3085141, at *6 (E.D. Tex. June 21, 2024); *Stephens v. Big Spring Herald, Inc.*, 1:19-CV-123-H, 2020 WL 11577890, at *3 (N.D. Tex. Aug. 19, 2020) ("Even the "highest-ranking official of a global company" must give a deposition where it is reasonable to believe that the chief executive has personal involvement in matters that are relevant to claims and defenses in a pending lawsuit."). Ultimately, if the executive's deposition is reasonably calculated to lead to admissible evidence under Rule 26(b), it is permissible. *E.g.*, *Stephens*, 2020 WL 11577890, at *2-3 (holding that defendant's testimony, "the liberal standard for relevance," and "the fact that the defendants are relatively small

5

companies" weighed in favor of permitting executive deposition).

As an initial matter, this case is nothing like the cases where the apex doctrine typically applies. *See* Mot. at 6 (considering whether high ranking executives at Samsung—a organization that currently has more than 260,000 employees—should be deposed to avoid harassment); Samsung Newsroom, *Fast Facts*, Samsung (last accessed Aug. 9, 2024, 5:37 PM), https://news.samsung.com/global/fast-facts. By stark contrast, Muddy Waters is a small investment fund with not thousands, hundreds, or even ten employees: the closely held private organization has eight total employees or independent contractors. Mr. Block is indisputably in control of the company and its actions as one of its only executive officers and its Chief Investment Officer. Ex. 2; *see Fazzino*, 2020 WL 13228700, at *2–3 (explaining that classifying movant "as an apex executive is somewhat of a dubious proposition" because the corporation at issue was "comprised of a board of eight directors and three staff members"—"hardly the kind large corporate entity … contemplated in" the citations). Moreover, Mr. Block personally controls Muddy Waters' funds, ▮▮▮▮▮ Ex. 1. Mr. Block and Muddy Waters thus fall outside the scope of the apex doctrine.

Moreover, Mr. Block does not disclaim or deny personal knowledge of the matters underlying the MDFL action. This is reason enough to deny his motion as courts routinely reject application of the apex witness doctrine where, as here, the witness fails to submit a declaration stating that he does not have unique personal knowledge. *See, e.g.*, *Angiodynamics, Inc. v. Biolitec, Inc.*, No. 08-cv-005, 2010 WL 11541925, at *2–3 (N.D.N.Y. Sept. 17, 2010) (finding affidavit from corporate counsel insufficient to show senior executive had no relevant and unique knowledge); *Burnett v. Wahlburgers Franchising LLC*, No. 16-cv-4602, 2018 WL 8367463, at *3 (E.D.N.Y. July 10, 2018) (similar).

Mr. Block does not deny his personal knowledge because he cannot: ▮

▮

▮ As Mr. Block's own authority makes clear, an executive with "relevant personal knowledge" cannot hide behind the apex doctrine to avoid being deposed. *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 269 (N.D. Cal. 2012).

Nor is the subpoena duplicative. Mr. Block claims that documents and a forthcoming deposition of Mr. Brick will be sufficient. Not so: Mr. Block was personally involved in ways that Mr. Brick was not ▮

▮

▮ are relevant to, *inter alia*, Mr. Bonilla's financial motivation to publish false information about TTI for his own gain, and each of these items is squarely within Mr. Block's knowledge, not Mr. Brick's. TTI's subpoena to Mr. Block thus seeks relevant information unavailable from other sources.

B.   Mr. Block Likely Has Personal Knowledge And Responsive Documents

Regarding the subpoena's documents requests, Mr. Block argues that the subpoena is overbroad, cumulative, and seeks irrelevant information.[5]  None of these objections have merit.

The document and deposition requests seek information relevant to establishing, *inter alia*, Mr. Bonilla's intent



Nor is the subpoena cumulative.  TTI only seeks non-duplicative documents from Mr. Block.  To the extent the documents might be produced by other employees of Muddy Waters, Mr. Block need not reproduce them.

---

[5]  Mr. Block also argues that it is unduly burdensome to require him to sit for a deposition on a day that he will not be in Austin, but TTI would certainly work with Mr. Block to ensure his convenience.  Mr. Block's fourth objection thus provides no basis to quash.

Mr. Block suggests in a footnote that service of the subpoena was improper. As explained, TTI served the subpoena consistent with the parties' practice and Mr. Block's original counsel informed TTI that he would accept service.  This suffices.  But in any event, Mr. Block "relegated [this argument] to a footnote" and under Fifth Circuit precedent, it is forfeit.  *Vernon Smith, etc. v. Sch. Bd. of Concordia Par.*, 88 F.4th 588, 596 (5th Cir. 2023).

[6]  To the extent that any Request is overbroad, TTI explained in the parties' meet and confer that it would certainly cooperate with Mr. Block to narrow the parameters.  Ex. 13.  Mr. Block refused to offer any narrowing proposals or even provide a specific, fact-based explanation for why TTI is not entitled to the information it seeks, or why TTI's requests would be burdensome to produce.  Mr. Block's Motion also conspicuously omits any such explanation.

▮▮▮▮ it is likely that Mr. Block has his own relevant documents and communications, and he cannot simply state that the subpoena is duplicative before conducting a reasonable search to see what information is in his possession. In any event, to date, neither of the other two parties that Mr. Block claims are the proper source of documents—Muddy Waters and Mr. Brick, both of whom are represented by the same counsel as Mr. Block—has complied with a subpoena issued to them: TTI has received an incomplete eight-document production from Muddy Waters and nothing from Mr. Brick.[7] Even if the information sought from Mr. Block was duplicative—and it is not—TTI is, at minimum, entitled to discovery from one of these three parties at issue.

## II. <u>NEITHER JOURNALIST'S PRIVILEGE NOR BUSINESS CONFIDENTIALITY JUSTIFY QUASHING THE SUBPOENA</u>

Mr. Block's final three objections provide no basis to quash. Nor has he identified a single document subject to these objections. *E.g.*, *Williams v. City of Dallas*, 178 F.R.D. 103, 114–15 (N.D. Tex. 1998) (declining to reach journalist's privilege claim with no document identified).

<u>First</u>, Mr. Block speculates that the subpoena seeks confidential business information. But TTI manufactures and sells power tools; it is not a competitor to Muddy Waters. And there is a protective order in place to guard against misuse of any confidential business information. *MC Trilogy Texas, LLC v. City of Heath, Texas*, 22-cv-2154, 2023 WL 7190652, at *6 (N.D. Tex. Nov. 1, 2023) (denying motion to quash where protective order would cover any privacy issues, "including those related to [movant's] confidential business information"). Mr. Block has not produced any documents, nor made any showing that the information TTI seeks is highly proprietary, let alone to the extent that the current protective order would not be sufficient. Nor

---

[7] Mr. Block notes that TTI's motions to compel against Mr. Brick and Muddy Waters are also pending in this District, but misrepresents their status: TTI served those motions on the counsel who was then representing Mr. Brick and Muddy Waters. Mr. Block, Mr. Brick and Muddy Waters cannot play a shell game with counsel to avoid responding to lawful process.

9

could Mr. Block logically make such a showing: the documents and information TTI seeks concern a false short seller report and stock trades that took place more than a year ago. Such business information is not proprietary.

Second, Mr. Block's conclusory statements fail to show that he or Muddy Waters can claim journalist's privilege, particularly without specifying any document to which the privilege would apply or what journalistic activity he was supposedly engaged in. *See Williams,* 178 F.R.D. at 114-15. Moreover, the MDFL court overruled Mr. Bonilla's assertion of the journalist privilege, finding that he was not a journalist but instead a short seller publishing reports for profit. Order, *Techtronic Indus. Co. Ltd. v. Bonilla*, 8:23-CV-1734-CEH-AEP, ECF No. 55 (M.D. Fla. Jan. 31, 2024). If Mr. Bonilla—who actually wrote and published the reports—does not enjoy journalist's privilege, then Mr. Block—████████████████████████████████—cannot either.

Finally, Mr. Block suggests that confidential or anonymous sources must be protected. To be clear, Mr. Block has yet to identify a single confidential or anonymous source implicated by the subpoena, why he would have information regarding anonymous sources, and why any sources would be anonymous, especially in light of the MDFL court's order compelling Mr. Bonilla to disclose his sources. This hypothetical objection should be rejected.

## CONCLUSION

For the foregoing reasons, TTI respectfully requests that the Court deny Mr. Block's motion and enter an order compelling Mr. Block to comply with the subpoena.

Dated: August 16, 24

By: /s/ *Asher Griffin*
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Asher Griffin (TX Bar No. 24036684)
300 West 6th St, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
Facsimile: (737) 667-6110
ashergriffin@quinnemanuel.com

Jason D. Sternberg (*pro hac vice* anticipated)
2601 South Bayshore Drive, 15 Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975
jasonsternberg@quinnemanuel.com

Kristin Tahler (*pro hac vice* anticipated)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
kristintahler@quinnemanuel.com

*Attorneys for Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on Friday, August 16, 2024, true and correct copies of the foregoing document were served on the following counsel of record at the addresses and in the manner indicated:

**VIA ECF AND E-MAIL**

>Dilan Esper
>HARDER STONEROCK LLP
>8383 Wilshire Boulevard, #526
>Beverly Hills, CA 90211
>desper@harderllp.com
>
>David C. Lawrence
>William A. Duncan
>RIGBY SLACK PLLC
>3500 Jefferson St., Suite 330
>Austin, Texas 78731
>dlawrence@rigbyslack.com
>
>John S. Summers
>Andrew M. Erdlen
>HANGLEY ARONCHICK SEGAL PUDIN & SCHILLER
>One Logan Square, 27th Floor
>Philadelphia, PA 19103
>jsummers@hangley.com

>*/s/Asher Griffin*
>Asher Griffin